EASTER *v.* FARMERS BANK & TRUST COMPANY.

4-4078

Opinion delivered January 13, 1936.

*U. J. Cone,* for appellant.

*Compere & Compere,* for appellee.

McHANEY, J. Appellant brought this action against appellee in April, 1934, in which he alleged that it was indebted to him in excess of $3,700 on various over-charges and undercredits, and which should be applied to the satisfaction of his indebtedness to it, and that the mortgage securing his indebtedness should be canceled and he have judgment against it for the excess. Appellee answered, denying it was indebted to appellant in any sum, as well as denying all material allegations in the complaint, and filed a cross-complaint against him alleging that he was indebted to it on two promissory notes, both dated June 30, 1931, one for $454.17 and the other for $3,005.50, with interest from date at 8 per cent., and both secured by mortgage on certain real estate, for which amount it prayed judgment and a foreclosure of said mortgage. Trial resulted in a decree dismissing appellant's complaint for want of equity, and a judgment against him and his wife, joint maker of said note and mortgage, for the amount thereof, with interest, and a

foreclosure of said mortgage, in accordance with the prayer of the cross-complaint. The case is here on appeal.

One of the matters of which appellant complains relates to the sale of his stock in appellee bank in 1923. He was the owner of $700 par value of said stock, and his sister was the owner of $1,400 worth. He says that Mr. Pugh, active vice-president of the bank, told him, if he would acquire his sister's stock, he, Pugh, would find a sale for it at $1.50 for each dollar par value and credit same on appellant's indebtedness to the bank; that he acquired his sister's stock, paying her $1.50 and then sold all of his stock through the bank; that he learned several years later, about the time this suit was brought, that the bank had given him credit for the $2,100 worth of stock for only $2,625, a price of $1.25, whereas he should have been given credit for $3,150, which would have been the price if sold at $1.50. The difference amounts to $525, for which amount with interest he sought to recover against appellee. Mr. Pugh testified that the stock was sold at $1.25, which was the market value of the stock at that time, and that he did not tell appellant he would get $1.50 for it. Appellant made no complaint about this transaction at any time prior to the bringing of this suit, although the amount was applied on his indebtedness and he received statements of his account with the bank from month to month thereafter.

Another item about which he complains relates to an indebtedness of appellant to Mr. Gus Wilson, an officer in appellee bank. On January 2, 1925, appellant executed a note to appellee bank for $6,000, secured by a mortgage on his real estate. The purpose of this note and mortgage was to secure sufficient funds with which to pay the indebtedness to Wilson and to take up his other indebtedness to the bank, or at least a part thereof. He contends that, in the settlement with Wilson the bank paid Wilson for his account $1,170.13 more than he owed Wilson. The mortgage covered appellant's gin plant, gin lot, his home and a farm. In February, 1925, the gin burned and insurance to the amount of $3,812.56 was col-

lected and turned over to the bank to be applied on his indebtedness by appellant. In June, 1925, Easter sold the gin lot for $2,000, which was also turned over to appellee and applied on appellant's indebtedness. Appellant contends that the insurance money and the sale price of the lot were directed by him to be applied on his mortgage indebtedness of $6,000, and that this was all of his indebtedness to the bank at that time. Not only is this fact disputed by Mr. Pugh and the records of the bank, including another note, but the fact is that appellant thereafter renewed the mortgage indebtedness from time to time for an amount largely in excess of the amount which would have remained had the items above mentioned been applied on the $6,000 note. The fact is, as testified by Mr. Pugh and as shown by the records, that he was indebted on another note in excess of $1,000 and for an overdraft in his personal account of some $700 or $800. We cannot undertake to state all of the items and claims made by appellant in detail. As found by the trial court, appellant is in the unfortunate situation of having to depend for his evidence to support his claim on his memory of the details of transactions that took place many years ago, whereas his memory is disputed by the records of the bank and by the positive testimony of its officers, to say nothing of his own conduct in waiting so many years to speak, and of renewing his obligations to the bank from time to time after making payments thereon both of principal and interest without any question as to their correctness. He attempts to explain his long delay by reason of his close friendship with, and absolute confidence in, the honesty and integrity of the bank's officials, but this is not sufficient to excuse this delay. Not only did he make payments on his obligations to the bank after January 2, 1925, as above mentioned, but he made other payments and made other renewals of his obligations under circumstances that indicate that he was fully aware, or at least he should have been aware, of the manner of application of payments. Not only this, but the bank rendered him statements of his account from month to month of his bank accounts, and, if such statements were incorrect, it was his duty to

speak within a reasonable time. *City National Bank* v. *McGraw, ante* p. 927. In that case we quoted with approval from *Bank of Hatfield* v. *Clayton*, 158 Ark. 119, 250 S. W. 347, the following:

"The rule seems to be universal that the furnishing of a statement by a bank to depositor, where the items are sufficiently shown to put the depositor upon notice, constitutes an account stated, to which objection must be made within a reasonable time, otherwise the account is final."

But he also seeks to excuse his delay in questioning his transactions with appellee because of the condition of his health and because of his unfortunate blindness, but we think this fact would not be sufficient to excuse his duty to act and speak promptly; and that he either knew the facts or should have known them by reason of the transaction above mentioned.

We are therefore of the opinion that the court correctly dismissed appellant's complaint for want of equity, and correctly entered judgment against him for the amount of his debt to appellee, and directed a foreclosure of the mortgage. The judgment is therefore affirmed.